IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JON CHRIS McKINNEY

       Plaintiff,

     vs.

VIGO COUNTY SHERIFF'S
DEPARTMENT, and DEPUTY SCOTT
BROWN, individually,

       Defendants.

Case No. 2:19-cv-00413

# Complaint and Demand for Jury Trial

Plaintiff Jon Chris McKinney, by his undersigned attorneys of record, alleges:

## STATEMENT OF CLAIMS

1.     Plaintiff seeks money damages from Defendants for violating his constitutional rights. He also brings forward supplemental claims for violations of Indiana state law.

2.     Plaintiff was the victim of excessive force by Defendants Vigo County Sheriff's Department and Deputy Scott Brown, individually, in violation of the Fourth Amendment to the U.S. Constitution and Indiana state tort laws.

3.     Plaintiff brings suit under 42 U.S.C. § 1983.

4.     Plaintiff has served notice of his state law claims in compliance with the Indiana Tort Claims Act.

## JURISDICTION

5.     This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1981, 1983, and 1988.

6.     This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

7.     This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

## VENUE

8.     Venue is proper in this district based on 28 U.S.C. § 1391(b), as Defendants are residents of this district and the acts or occurrences giving rise to these claims occurred in this district.

## PARTIES

9.     Plaintiff Jon Chris McKinney resides in Vigo County, Indiana.

10.     Defendants are all, upon information and belief, Indiana county and/or municipal entities and/or individual members of law enforcement agencies, in an appointed or elected capacity.

11.     Defendant Vigo County Sherriff's Department ("VCSD") is a law enforcement agency located in Vigo County, Indiana.

12.     Defendant Scott Brown was, at all times relevant, a deputy in the VCSD. He is sued in his personal and individual capacities.

13.    All Defendant law enforcement officers, agents and/or employees were, at all times relevant to this Complaint, working as Indiana law enforcement officers acting under color of state law and within the scope and course of their official duties and employment as officers.

## FACTS

14.    On or about April 12, 2018, Plaintiff McKinney and his family were awakened around 4 a.m. to the sound of their dogs barking to alert them that someone was outside their home.

15.    Because McKinney's home had been burglarized in the past, and because McKinney feared that an intruder was attempting to steal tools from his truck or trailer parked outside the house, McKinney exited the house to survey the surrounding yard.

16.    As he stood in the yard, McKinney noticed a vehicle driving by suspiciously slowly. Once the vehicle was out of his line of vision, McKinney heard a car door slam.

17.    McKinney got into his own vehicle to follow the slow-moving vehicle and investigate. He was not able to locate the other vehicle.

18.    However, as he approached the intersection of Hunt and East Old Maple, McKinney noticed a marked Vigo County Sherriff's cruiser parked, with its headlights turned off, in a parking lot near the intersection.

19.    McKinney pulled his vehicle alongside the cruiser and rolled his window down to ask the uniformed deputy inside whether the intersection had seen

3

much recent traffic. The deputy did not respond to McKinney's question, but instead demanded that McKinney identify himself. McKinney did identify himself and told the deputy that he believed someone had attempted to burglarize his home.

20.    When McKinney asked the officer's name, the officer identified himself as Deputy Scott Brown. McKinney knew of Deputy Brown, who had a reputation in the community for being aggressive and unpleasant. When he learned of Deputy Brown's identity, McKinney decided to leave, telling Deputy Brown, "I know you and I don't need your help." He turned his vehicle towards home to return to his wife and three children.

21.    Before McKinney could drive away, however, Deputy Brown exited his vehicle and stomped angrily towards McKinney. He demanded to know where McKinney was going, and McKinney responded that he was returning home to check on his family.

22.    McKinney drove home and, as he pulled into his driveway, saw that Deputy Brown had followed him home and had engaged his cruiser's emergency lights. Given the nature of their recent interaction, and given Deputy Brown's reputation, McKinney became afraid that Deputy Brown intended to physically harm him.

23.    McKinney decided to contact the Indiana State Police to let them know that Deputy Brown had followed him home, and to express concern for his own safety. McKinney asked that a State Police officer be dispatched to his home.

24. Meanwhile, additional deputies from the Vigo County Sherriff's Department arrived at McKinney's home. McKinney, still on the phone with the State Police, walked to where the deputies were standing and explained to Deputy Brown that he was on the phone with the State Police.

25. At this, Deputy Brown became enraged, exclaimed "you son of a bitch" and punched Mr. McKinney on the right side of his face smashing part of his ear, bruising his jaw, and bloodying his left cheek. Deputy Brown continued to beat McKinney as another deputy approached and began to tase McKinney in the lower back.

26. McKinney was never read his *Miranda* rights, nor informed that he was being arrested.

27. McKinney did not threaten the officers, resist them, or attempt to intimidate them. In fact, he told them that he would not resist them, and sat down when so instructed.

28. As he sat down, an officer leaped on top of him and slammed him onto the ground, then twisted his left arm behind his back and kicked him in the rib cage several times.

29. As the officers moved to handcuff McKinney, one of them grabbed McKinney's arm to move it behind his back. McKinney explained that his arm could not move in that way due to a double reattachment rotator cuff surgery on that shoulder. By this time, McKinney's wife had come out to the front porch, and she told the officers the same thing.

30.     The officer ignored McKinney and his wife and pulled McKinney's arm back as far and hard as he could, until McKinney screamed in pain as the officer taunted him. The action tore tendons, muscle and all three rotator cuff attachments.

31.     McKinney was taken to the Vigo County Jail. He was later taken to Union Hospital for treatment and then back to jail. He was denied his medications and ordered to take a pill, white in color, which the dispensing officer refused to identify.





*Figure 1- Plaintiff's injuries*

*Figure 2- Plaintiff's Injuries*

## COUNT I: 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force)

### Against Defendant Brown

32.     All previous paragraphs are incorporated herein by reference as though fully set forth.

33.     Plaintiff makes a claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

34.     The Fourth Amendment does not permit Defendants to use excessive force. *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

35.     A claim that an officer used excessive force in seizing an individual is "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id.*

36.     Factors relevant to the inquiry include "'[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009).

37.     Defendant Brown's use of force against Plaintiff was not reasonable under the circumstances, and was excessive.

38.     Plaintiff had not committed any crime.

39.     Plaintiff complied with the officers' instructions and posed no immediate threat to the safety of the officers.

40.     Plaintiff did not actively resist arrest or attempt to evade arrest.

41.     Deputy Brown, while acting under color of state law, beat Plaintiff viciously and injured him severely, without provocation and without justification or reason.

**Wherefore**, as a direct and proximate result of the actions of Defendant, Plaintiff has suffered damages in an amount in excess of $700,000.00.

## COUNT II: 42 U.S.C. § 1983

### Against Vigo County Sherriff's Department

42.     All previous paragraphs are incorporated herein by reference as though fully set forth.

43.     Governmental bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution. *Monell*, 436 U.S. at 694-95.

44.     Such governmental liability exists where a governmental entity fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989).

45.     At all times relevant, Defendant Vigo County Sherriff's Department had a duty to properly train, supervise, and discipline their employees and agents.

46.     Defendant breached that duty, in part, by:

a)     Improperly training, authorizing, encouraging or directing officers on proper use of force.

b)     Failing to investigate allegations of excessive force.

8

c)      Failing to discipline officers for violations of policy related to excessive force.

47.    VCSD is culpable for purposes of § 1983 for their choice not to properly train or properly supervise their officers, for failing to investigate allegations of excessive force, and for failing to discipline officers for misconduct.

48.    The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendant Brown and the other deputies and the Defendant's failure to train, supervise, investigate, and discipline any of the officers involved in this incident amounting in a deliberate indifference to Plaintiff's constitutional rights.

49.    This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Plaintiff.

50.    Defendant failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the VCSD.

51.    The condoning of misconduct, and the failure to end this policy, pattern of practice, or custom was a proximate cause to the injuries suffered by Plaintiff.

**Wherefore**, as a direct and proximate cause of the actions of the Defendant, Plaintiff has suffered damages in an amount in excess of seven hundred thousand dollars ($700,000.00).

## COUNT IV: Assault, Battery, False Arrest, False Imprisonment, Intentional Infliction of Emotional Distress

### Against Deputy Brown and VCSD

52.  All previous paragraphs are incorporated herein by reference as though fully set forth.

53.  Deputy Brown is an employee of Defendant VCSD and VCSD is liable for the conduct of Deputy Brown which occurred in the course and scope of his employment with VCSD.

54.  All acts of Deputy Brown alleged above were conducted within the scope of the Deputy Brown's employment or duties.

55.  The actions of Deputy Brown were willful, malicious and in violation of the known rights of Plaintiff.

56.  On April 12, 2018, Defendant Brown committed assault and battery upon Plaintiff when he inflicted bodily harm on Plaintiff by punching him and beating him.

57.  Defendant Brown falsely imprisoned Plaintiff in his squad car. Plaintiff's false imprisonment continued as Defendant Brown transported Plaintiff to the Vigo County Jail.

58.  At all times, Plaintiff knew he was imprisoned by Defendant Brown.

59.  Defendant Brown's conduct was intentional and done through the assertion of legal authority over Plaintiff.

60.  Defendant Brown's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

**Wherefore**, as a direct and proximate cause of the actions of Defendants, Plaintiff has suffered damages in an amount in excess of $700,000.00.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants, and grant the following:

A. Enter judgment on behalf of Plaintiff against Defendants for reasonable actual damages sufficient to compensate him for the violation of his Fourth Amendment rights and rights under Indiana state law;

B. Order Defendants to pay punitive and other exemplary damages based on 42 U.S.C. § 1983 claims;

C. Order Defendants to pay Plaintiff's attorneys' fees and costs as authorized by 42 U.S.C. §1988; pre-judgement interest and any other relief deemed necessary and proper; and

D. Grant all other and additional relief to which Plaintiff may be entitled.

Respectfully Submitted,

RILEY WILLIAMS & PIATT, LLC

/s/ *William N. Riley*

William N. Riley, Atty. No. 14941-49
Anne Medlin Lowe, Atty. No. 31402-49
301 Massachusetts Avenue
Indianapolis, IN 46204
(317) 633-5270
Fax:  (317) 426-3348
Email:  wriley@rwp-law.com
         alowe@rwp-law.com

## Jury Demand

Plaintiff respectfully demands a jury trial on all issues and counts so triable.

/s/ *William N. Riley*

William N. Riley